**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Rashad B. Swanigan | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 4780 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| City of Chicago | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rashad B. Swanigan sued the Defendant, the City of Chicago, alleging that its officers violated Mr. Swanigan's constitutional rights by unlawfully arresting and detaining him on August 22, 2006. The Plaintiff sought and won a $60,000 jury verdict on his unlawful detention claim in *Swanigan v. Trotter et al*, 1:07-cv-04749 ("*Swanigan I*"). Following that case and a remand from the Court of Appeals, the Court lifted the stay on this *Monell* action. Plaintiff advances three *Monell* claims, alleging that his constitutional rights were violated by the Defendant's "Hold Past Court Call" policy, unduly suggestive line-up policy, and "Clear Closed" policy under 42 U.S.C. § 1983. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978) (local governments may be sued for constitutional deprivations caused by governmental custom). Plaintiff alleges that the Defendant's policies, which he claims caused him to be unlawfully arrested and detained, forced him to participate in line-ups both related and unrelated to his alleged crime, and caused him to be currently listed in police documents as the perpetrator of a crime he did not commit, directly causing his constitutional rights to be infringed. Defendant has moved to dismiss the *Monell* claims on a variety of grounds, including that Plaintiff has failed to allege a constitutional deprivation. After accepting

all well-pleaded allegations in the Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Court nevertheless finds that Plaintiff has failed to allege sufficient facts to maintain his claims. As such, and for the reasons discussed herein, the Court grants Defendant's motion to dismiss with prejudice.

## BACKGROUND

This Court takes the following allegations from the Amended Complaint and treats them as true for the purposes of the Defendant's motion.[1] *See Gillard v. Proven Methods Seminars, LLC*, 388 F. App'x 549, 550 (7th Cir. 2010).

On August 22, 2006, in the late afternoon, Officers Robert Trotter and Thomas Muehlfelder observed Plaintiff at Labe Bank in Chicago, Illinois. (Dkt. 75 at ¶¶ 9-12.) Thinking that the Plaintiff fit the description of the man that had been dubbed the "hard hat bandit," the officers approached the Plaintiff, inquired if he was trying to the rob Labe Bank, placed him in handcuffs, and searched his vehicle. (*Id.* at ¶¶ 15-16.) When the Plaintiff was unable to provide proof of insurance and several hard hats were found in the car, the officers took the Plaintiff to the police station. (*Id.* at ¶¶ 24-25.)

Three to four hours after arriving at the police station, Plaintiff was given a "Hold Past Court Call" designation with the purpose of providing detectives time to conduct an investigation in relation to the "hard hat bandit" case. (*Id.* at ¶¶ 36, 38.) Due to the "Hold," the Plaintiff was kept in custody for nearly 50 hours, during which time the Plaintiff was interrogated regarding

---

[1] The parties disagree on whether the Court may take judicial notice of facts contained within *Swanigan I*. While the general rule is that "a court simply examines the allegations in the complaint to determine whether they pass muster," there exists a "narrow exception to this rule to permit a district court to take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (collecting cases). A court may take "judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id.* at 1081. As such, and at the Defendant's request, *see* Dkt. 83 at 2 n. 1, the Court takes judicial notice of the facts contained within its decision from *Swanigan I*.

the "hard hat bandit" case and placed in numerous line-ups. (*Id*. at ¶¶ 38, 41, 42, 45.) Although the Plaintiff was initially identified by four witnesses as the hard hat bandit, the assistant state's attorney, finding the identifications lacking due to deficiencies in the line-ups, refused to approve the charges and released the Plaintiff from custody after 50+ hours of incarceration. (*Id*. at ¶¶ 42, 47, 50.) Approximately one month after the Plaintiff's release, the hard hat bandit case was officially closed. (*Id*. at ¶ 53.) The police case report was changed to the "Cleared Closed" designation, and currently lists the Plaintiff as the "offender" in the "hard hat bandit" case. (*Id*. at ¶ 54.)

Plaintiff brought a case against the individual police officers claiming false arrest and unlawful detention. *See Swanigan I*. During the litigation, Plaintiff filed the present *Monell* count, which was stayed pending resolution of *Swanigan I*. *See Swanigan v. City of Chicago*, 775 F.3d 956, 957 (7th Cir. 2015). The *Swanigan I* jury found against Plaintiff on his false arrest claim, but found for him on his unlawful detention claim, awarding him $60,000. (Dkt. No. 75 at ¶¶ 62, 63.) Following the verdict, the Plaintiff moved to lift the stay on this *Monell* count. *Swanigan*, 775 F.3d at 958. In seeking to lift the stay, Plaintiff stated that he intended to file an amended complaint to narrow the issues in his complaint consistent with the jury verdict and seek additional monetary, declaratory, and injunctive relief. *Id*. The Defendant opposed the motion, arguing that the "Certification of Entry of Judgment," under which the Defendant agreed to the entry of judgment against it on the *Monell* count if the *Swanigan I* jury found for Plaintiff, would require the Court to dismiss the *Monell* count for lack of a justiciable case or controversy. *Id*. The Court denied the motion to lift the stay and dismissed the case on mootness standing grounds. *Id*. at 958-959. The Seventh Circuit vacated and remanded the judgment, holding that although it had "no doubt that [Plaintiff's] *Monell* claim face[d] jurisdictional and substantive

legal barriers," this Court could only consider those issues after Plaintiff was allowed to amend his complaint. *Id*. at 963. Following that ruling, this Court lifted the stay on the present action. (Dkt. No. 74.)

## **LEGAL STANDARD**

Federal rule of Civil Procedure 12(b)(1) allow dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Amended Complaint. FED.R.CIV.P. 12(b)(1). A Court lacks subject matter jurisdiction where there is no case or controversy. *See J.N.S., Inc. v. State of Ind.*, 712 F.2d 303, 305 (7th Cir. 1983) (further stating that "federal courts…do not render advisory opinions) (citing *Aetna Life Insurance Co. v. Hawroth*, 300 U.S. 227, 239 (1937)). "For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Public Workers of American (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947)). In analyzing a motion under Rule 12(b)(1), this Court "accepts that the allegations in the amended complaint are true, but may weigh evidence submitted by the parties to determine whether jurisdiction exists." *See, e.g.*, *Radha Geismann, M.D., P.C. v. Allscripts Healthcare Sols., Inc.*, 764 F. Supp. 2d 957, 959 (N.D. Ill. 2011).

A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face to survive a 12(b)(6) challenge. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* The complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *See Visiting Nurses Ass'n of Southwestern Indiana, Inc. v. Shalala*, 213 F.3d 352, 354 (7th Cir. 2000). In making the plausibility determination, the

Court relies on its "judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal,* 129 S.Ct. at 1950). For purposes of this motion, this Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

Where challenges pursuant to both 12(b)(1) and 12(b)(6) are presented, it is customary that the 12(b)(1) issue be addressed first. *See, e.g., Oliphant v. Bradley*, No. 91 C 3055, 1992 WL 153637, at *4 (N.D. Ill. Feb. 20, 1992).

## DISCUSSION

To establish liability against the Defendant under *Monell*, Plaintiff must show that: (1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker; which (3) was the proximate cause of his injury. *See Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 535 (7th Cir. 2005); *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.); *see also Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2009) ("the premise behind a § 1983 action against a government body is 'the allegation that official policy is *responsible* for the deprivation of rights.'") (emphasis in original). In addition, in order for his *Monell* claims to succeed, Plaintiff must show that he suffered a constitutional injury. *See, e.g., Hunt ex rel. Chiovari v. Dart*, 754 F. Supp. 2d 962, 974 (N.D. Ill. 2010).

The Court addresses each of Plaintiff's claims in order.

**A.      Count I – "Hold Past Court Call" Policy and Practice**

In Count I of the Amended Complaint, Plaintiff alleges that, due to the Defendant's "Hold Past Court Call" policy, he was arrested and held in violation of his Fourth Amendment rights.  (Dkt. No. 75 at 12-17.)  Plaintiff's position is that the Defendant's policy enabled the officers to unjustifiably arrest and detain him, therefore robbing him of his Fourth Amendment substantive due process rights without any fear of repercussion and without any reasonable suspicion.  Finally, Plaintiff also clarifies that he is suing the Defendant for the "initial arrest and detention," which he alleges "extends not only to his detention for an unreasonable period of time, but to the fact that plaintiff was arrested at all and was detained" until the "Hold" was placed on him.  (Dkt. No. 75 at ¶ 100.)

The Defendant makes a number of counterarguments in its briefing.  The Court addresses each below, in turn.

1.      False Arrest

First, the Defendant argues that because the *Swanigan I* jury found that there was no false arrest, *i.e.* that no federal deprivation occurred, granting Plaintiff's *Monell* claim here would create an inconsistent verdict.  The Court agrees.  Where the jury has explicitly decided that the Plaintiff was not deprived of a federal right, *i.e.* the officers did not falsely arrest the Plaintiff as they were found to have probable cause, Plaintiff's contention that the Defendant's Hold policy might have authorized unconstitutional arrest is "quite beside the point."  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (also holding that in an action of damages, as is the case here, "neither *Monell* [], nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); *see also Swanigan v. City of*

*Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations."). Plaintiff's reliance on *Thomas v. Cook Cty. Sheriff's Dep't*, 588 F.3d 445, 449 (7th Cir. 2009) *opinion amended and superseded on denial of reh'g*, 604 F.3d 293 (7th Cir. 2010), to counter this conclusion is factually inapposite. (Dkt. No. 89 at 5.) In that case, the Court held that the City could have been held liable, even though its offending officers were not, because the jury's verdict did not foreclose the possibility that the plaintiff's medical needs were not met due to city's policies. *See Thomas*, 604 F.3d at 305. The same issue does not exist in this case. Here, the jury found that Plaintiff's arrest occurred without any constitutional violation. A ruling here granting Plaintiff's *Monell* claim would be inconsistent with the jury's ruling, in violation of *Thomas*. *Id*. The Court's finding on this issue is bolstered by the fact that Plaintiff, aside from advancing unsupported assertions, fails to provide any facts or argument supporting its position that a verdict finding the Defendant liable in this case could in fact be consistent with the verdict in *Swanigan I*.

Second, Defendant contends that Plaintiff has failed to state sufficient facts to show the Defendant's arrest was "caused" by the Hold policy. (Dkt. No. 83 at 6.) The Court agrees. To succeed in its *Monell* claim, the Plaintiff must show that the Defendant's Hold policy was the "moving force" behind his constitutional injury, *see Bryan County*, 520 U.S. at 407-08, meaning that Plaintiff must set forth allegations creating a plausible link between the polices and the deprivation of his rights. *See Thomas*, 604 F.3d at 306. Construing the facts and all reasonable inferences in the Plaintiff's favor, the Plaintiff has nevertheless failed to meet this requirement. Plaintiff's Amended Complaint is rife with bare assertions that his unconstitutional arrest was due to the Hold policy. (*See, e.g.,* Dkt. No. 75 at ¶¶ 13, 96.) In an attempt to lend plausibility to

his position, Plaintiff cites other cases in which the courts have addressed the Hold policy and declared it unconstitutional. (Dkt. No. 75 at ¶¶ 94-95.) Though those cases do address the legality of the policy, none of them provide support of Plaintiff's contention that the policy is indeed the moving force behind the Plaintiff's arrest in this case, or false arrests in general. Based on facts in the Amended Complaint, this Court does not find it even plausible that the officers, *because* of the Hold policy, decided to arrest the Plaintiff. As such, the Court finds that the Amended Complaint fails to state a claim for municipal liability, and dismisses Count I as it relates to the false arrest issue.[2]

2.  Unreasonable Detention

Defendant presents numerous responses to Plaintiff's dual contentions that he must be compensated both for the "three or four hours" prior to the "Hold" designation being placed upon him and for the hours that he was unreasonably detained under the "Hold." (Dkt. No. 75 at ¶ 100.)

The Court first turns to the period during which the Plaintiff was allegedly unreasonably detained under the "Hold" designation. In regards to compensatory damages, Defendant contends that because Plaintiff has already received compensation for the unlawful detention claim in *Swanigan I*, his current *Monell* claim is no longer an actual case or controversy and therefore should be dismissed on 12(b)(1) grounds. (Dkt. No. 83 at 5.) Where a party has already been monetarily compensated for a violation of its constitutional rights, as is the case here for the unreasonable detention period after the Hold designation was constituted, the party is "not entitled to recover any *additional* compensatory damages from the [Defendant] because of their *Monell* claim." *See, e.g., Elrod v. City of Chicago*, No. 06 C 2505, 2007 WL 3241352, at

---

[2] As the Plaintiff has failed to state a claim, the Court need not address the Plaintiff's requests for injunctive or declaratory relief as related to the false arrest claim.

*3 (N.D. Ill. Nov. 1, 2007) (emphasis in original). Plaintiff fails to cite any authority to the contrary.

In regards to injunctive relief for the period of time that Defendant was detained under the Hold designation, Defendant argues that the Plaintiff lacks standing. A plaintiff must have standing "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). A party seeking injunctive relief has standing if "(1) [the party is] under threat of an actual and imminent injury in fact; (2) there is a causal relation between that injury and the conduct to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury." *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010). As such, the Plaintiff must demonstrate a "personal stake in the outcome" and that he is in "immediate danger of sustaining a direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1980).

Plaintiff fails to meet these requirements. As in *Lyons*, the Plaintiff must be able to make the "incredible assertion" that police officers in Chicago *always* unreasonably detain arrestees pursuant to the Hold policy or that the Defendant has authorized its officers to act in such a manner. *Id.* at 106. Plaintiff's support for either assertion is lacking. While Plaintiff cites to a study by the ACLU of Illinois as evidence that he is more likely to be stopped than other citizens, *see* Dkt. No. 89 at 8, as Defendant has correctly pointed out, the study *does not* support the position that the Plaintiff is in immediate danger of being unreasonably detained *because* of the Hold policy. Similarly, while Plaintiff does reference the fact that the Hold policy is written and allegedly authorizes police officers to act in an unconstitutional manner, he fails to indicate why he "might realistically be threatened by police officers who acted within the strictures of the [Defendant's] policy." *Lyons*, 461 U.S. at 106.

Further, Plaintiff's citation to *Honig v. Doe* is unpersuasive as, in that case, the Supreme Court granted standing precisely because, given the facts of that case, "respondent would be faced with a *real and substantial threat*" by various school districts' policies. 484 U.S. 305, 322 (1998) (emphasis added). In that case, in which students sought injunctive relief to bar school districts from continually suspending them for misbehavior related to their handicaps, the Court found that, given representations by the State Superintendent of Public Instruction and other evidence supporting the likelihood that the students would be subjected to harm, a substantial threat existed. *Id*. Here, however, Plaintiff has failed to provide sufficient facts supporting such a finding. Likewise, Plaintiff's reference to Count III, regarding the "Clear Closed" policy, does little to add to the substantial threat analysis. Plaintiff alleges that because he is labelled as the perpetrator of the "hard hat bandit" case in still-available police files, he is more likely to again be subjected to an unreasonable detention due to the Hold policy. (Dkt. No. 89 at 8.) This speculative allegation falls "far short of the allegations that would be necessary to establish a case or controversy between these parties." *Lyon*, 461 U.S. at 106. As such, the Court concludes that the Plaintiff does not have standing to bring this suit for injunctive relief, and dismisses this element of the action.

Turning to the hours *prior* to the Hold being placed, the Court holds that Plaintiff fails to plead sufficient facts plausibly linking the Hold policy to him being held for three or four hours before the Hold policy was even "placed on him." (Dkt. No. 75 at ¶ 100.) As discussed above in relation to the false arrest claim, none of the facts in Plaintiff's Amended Complaint illustrate that a "causal nexus between [the Plaintiff's] injury," in this instance the prior 3-4 hours of detention, and the Hold policy, is plausible. *Palmquist v. Selvik*, 111 F.3d 1332, 1344 (7th Cir. 1997). Plaintiff's Amended Complaint states that the "purpose of the 'Hold Past Court Call' was

to enable the detectives to conduct an investigation and gather evidence against plaintiff for a series of bank robberies and restaurant robberies…" (Dkt. No. 75 at ¶ 37.) Nowhere in the Amended Complaint, however, are there *facts* to indicate that another purpose of the Hold policy was to enable the officers to detain the Plaintiff for 3-4 hours *before* the Hold designation was even applied. As discussed above, even if the 3-4 hours were deemed to be part of the unreasonable detention as a whole, which is not how the Amended Complaint reads, then the claim is nevertheless dismissed on 12(b)(1) grounds. Therefore, Plaintiff has failed to plead sufficient facts to support his contention that his prior detention was somehow caused by the Hold policy. Therefore, this aspect of the claim is dismissed.

In addition, as both parties have recognized, a claim for declaratory relief by itself is insufficient to maintain an actual case or controversy. *See, e.g., Parker v. Banner*, 479 F. Supp. 2d 827, 834 (N.D. Ill. 2007). Further, Plaintiff's request for attorney's fees is denied as Plaintiff is not the "prevailing party." 42 U.S.C.A. § 1988. Based on the above, the Court dismisses Count I in its entirety.

**B.      Count II – Line-up Procedures**

Plaintiff alleges that during the 50 hours that he was in police custody, both known and unknown detectives violated his constitutional rights by using him as "fodder for the line-up machine." (Dkt. No. 75 at 19-22.) Further, he alleges that he suffered harm because the executing officers "were completely unaware of and had had no training in recognized and scientific police procedures in the conduct of fair and unbiased line-ups." (*Id*. at ¶ 107.) Plaintiff also asserts that the jury verdict in *Swanigan I* did not compensate him for harm caused by being forced to partake in the line-ups, but rather only compensated him for his unreasonable detention. (Dkt. No. 89 at 14.) Defendant counters that Plaintiff's *Monell* claims must be dismissed

because the Plaintiff did not suffer a constitutional deprivation, the declaratory judgment does not create an actual controversy, and that Plaintiff lacks standing to seek any injunctive relief. (Dkt. No. 83 at 10.)

The Court holds that Plaintiff has failed to plead sufficient facts in support of his position that the allegedly illegal line-ups violated his constitutional rights. Plaintiff grounds his challenge in both the Fourth and Fifth[3] Amendments, but the Court does not find that his rights under either amendment were violated. First, Plaintiff alleges that the police's illegal line-up procedures, which he argues led to "a loss of liberty," amounts a due process violation. However, and as Defendant correctly counters, unduly suggestive line-ups, which is the only constitutional violation that Plaintiff alleges, are not unconstitutional unless "those flawed procedures compromised the constitutional right to a fair trial." *Alexander v. City of S. Bend*, 433 F.3d 550, 555 (7th Cir. 2006). The Seventh Circuit, discussing exactly this issue, has unequivocally held that these procedural safeguards provide "no support for the plaintiff's contention that an improper line-up proceeding in itself constitutes a distinct and actionable constitutional wrong." *Hensley v. Carey*, 818 F.2d 646, 648-49 (7th Cir. 1987). As Plaintiff was never formally indicted or subjected to any criminal proceeding, the "prophylactic rule" designed to protect him from the ills of unduly suggestive line-ups was never called into action.[4] *Id.* As such, the Plaintiff has failed to plead sufficient facts in support of his due process claim.

---

[3] It is black letter law that the Fifth Amendment due process prohibitions only apply to the federal government. *See, e.g. Carreon v. Baumann*, 747 F. Supp. 1290 (N.D. Ill. 1990) ("The Due Process Clause of the Fifth Amendment only applies to federal officials."). However, given that the Plaintiff cited to the Fourteenth Amendment in his Amended Complaint, *see* Dkt. No. 75 at ¶ 1, and that the Defendant responded accordingly, *see* Dkt. No. 93 at 12 n. 18, this Court will analyze controlling Fourteenth Amendment jurisprudence for both Counts II and III.

[4] Plaintiff cites to various Supreme Court case law in support of his claim. (Dkt. No. 89 at 11-12.) However, none of those cases discuss the Fifth of Fourteen amendment due process rights as applied to unduly suggestive line-ups. In fact, Plaintiff fails to cite a single case indicating that the facts that he alleges are sufficient to support a claim under the Fifth Amendment.

Plaintiff's allegation in regards to the Fourth Amendment fails for similar reasons. The thrust of Plaintiff's claim is that the Defendant violated his Fourth Amendment right to liberty and privacy by forcing him to "participate in line-ups" that were both related and unrelated to the crime for which he had been arrested. (Dkt. No. 89 at 12-13.) Plaintiff further characterizes these forced line-ups as "in essence a seizure within a seizure." (*Id*. at 13.) While Plaintiff does allege facts to support his claim that he was forced to participate in these line-ups, the mere forced participation in line-ups when already in custody does not amount to a constitutional violation. *See, e.g., U.S. ex rel. Vanorsby v. Acevedo*, No. 11 C 7384, 2012 WL 3686787, at *4 (N.D. Ill. Aug. 24, 2012) ("Prisoners can be required to participate in line-ups for cases unrelated to those for which they are in lawful custody."); *see also Rigney v. Hendrick*, 355 F.2d 710, 712 (3d Cir. 1965). Moreover, as Plaintiff's arrest was lawful, Defendants seizure within a seizure claim is devoid of legal support.[5] Therefore, as the Plaintiff has failed to present a viable claim based upon the unduly suggestive line-ups, the Court dismisses Count II.[6]

**C.      Count III – "Clear Closed" Policy**

Finally, Plaintiff alleges that his Fourth and Fifth Amendment constitutional rights are being violated by the Defendant's "Clear Closed" policy. Plaintiff argues that the policy permits the Defendant to maintain records that allegedly list him as the perpetrator of the "hard hat bandit" case despite the fact that the true perpetrator has already been found and convicted. (Dkt. No. 75 at ¶¶ 136-137.) Based on that policy, Plaintiff alleges that he currently suffers from emotional harm and may suffer additional harm, such as extended traffic stops or an "increased likelihood that a vehicle stop of plaintiff will be at gunpoint." (*Id*. at ¶¶ 139-150.) Defendant

---

[5] It is also problematic that Plaintiff fails to provide any legal support that being forced to participate in a line-up when already in custody is, in fact, a seizure for Fourth Amendment purposes. The Court declines to make such a finding.
[6] Given that the Court has dismissed Plaintiff's claim for failing to allege a constitutional violation, the Court need not address the Defendant's second and third counterargument.

contends that Plaintiff's claim must be dismissed for failing to allege a constitutional violation. In addition, Defendant argues that Plaintiff lacks standing to seek an injunction and that, assuming that both the damages and injunctive requests are dismissed, a request for declaratory judgment alone cannot survive Defendant's motion to dismiss. (Dkt. No. 93 at 12.)

The Court agrees that the Plaintiff has failed to allege a constitutional violation of either the Fourth or Fifth Amendment and thus dismisses Plaintiff's third *Monell* claim. Plaintiff first argues that the Clear Closed policy violates his "Fourth Amendment liberty and privacy rights." The Fourth Amendment right to privacy cannot be construed as a "general constitutional right to privacy." *Katz v. United States*, 389 U.S. 347, 350, 88 S. Ct. 507, 510, 19 L. Ed. 2d 576 (1967); *see also Willan v. Columbia Cty.*, 280 F.3d 1160, 1163 (7th Cir. 2002) ("[T]he only place to look for a *general* right of informational privacy would be the due process clause of the Fifth Amendment or (in this case, in which the defendants were acting under color of state rather than federal law) of the Fourteenth Amendment.") (emphasis in original). In addition, the Plaintiff has failed to supply and the Court has not found any authority indicating that the failure of police to expunge their allegedly incorrect police records is a matter of Constitutional concern, particularly in relation to privacy or liberty issues. Further, the Court does not find any meaningful support for Plaintiff's position that he has been, due to the policy, effectively convicted as a "violent felon[] on police records *in absentia* and without a trial." (Dkt. No. 89 at 15.) Such unsupported assertion does not persuade the Court that any constitutional right has been violated.

Plaintiff also alleges that his substantive due process rights were violated by the Defendant's policy. (Dkt. No. 89 at 16.) Under the Fourteenth Amendment (which the Court applies in lieu of the Fifth Amendment, *see* n.3 *supra*), substantive due process "prevents the

government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty….'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal citations omitted). The rights "encompassed by this theory have been carefully limited to 'matters relating to marriage, family, procreation, and the right to bodily integrity.'" *Kraushaar v. Flanigan*, 45 F.3d 1040, 1047 (7th Cir. 1995) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). Given that narrow jurisprudence, this Court cannot find that the Plaintiff's allegations that he is listed as a perpetrator on police documents support a claim that his substantive due process rights were violated, particularly given the high standard of such a claim. Plaintiff also states that he has no procedural recourse against the existence of the police records. (Dkt. No. 89 at 16.) To the extent that Plaintiff is alleging that his procedural due process rights are violated by the Clear Closed policy, he again fails to allege a constitutional violation. Procedural due process requires that any government action that deprives a person of life, liberty, or property but survives substantive due process scrutiny "must still be implemented in a fair manner." *Salerno*, 481 U.S. at 739. Here, Plaintiff was not deprived of any of his rights when he was labelled a suspect or perpetrator in police documents. As such, the implementation of that labelling cannot be seen as a violation of his procedural rights, where no substantive rights were infringed.

As such, because Plaintiff has failed to present a viable claim in relation to the "Clear Closed" policy, the Court dismisses Count III.[7]

**CONCLUSION**

---

[7] As with Count II, the Court need not discuss the Defendant's counterarguments regarding injunctive and declaratory relief.

Because the Amended Complaint has not sufficiently alleged the plausibility of a constitutional injury and for the reasons explained above, the Defendant's motion to dismiss the Plaintiff's *Monell* claims is granted with prejudice.


_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:  2/12/2016